IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**RICHARD ALLEN FREIBERG, N.M.D.,**

    Plaintiff,

vs.                                            Case No. 4:05cv177-RH/WCS

**M. RONY FRANCOIS, in his official
capacity as Secretary of the Florida
Department of Health;
LARRY McPHERSON, in his official
capacity as Executive Director of
the Florida Board of Medicine;
CHARLES J. CRIST, in his official
capacity as Attorney General of
the State of Florida;
WILLIAM "WILLIE" N. MEGGS,
in his official capacity as State
Attorney, Second Judicial
Circuit of Florida,**

    Defendants.

_____/

## REPORT AND RECOMMENDATION

    This is a suit pursuant to 42 U.S.C. § 1983. Doc. 34 (second amended complaint). Defendants have filed motions to dismiss for failure to state a claim upon which relief may be granted. Docs. 41, 42, and 43 (memorandum). Defendants have

also filed several supplements to their motions.  Docs. 47, 48, 49, and 56.  Plaintiff has filed a response.  Doc. 57.  The motions to dismiss are ready for ruling.

Plaintiff filed a motion for partial summary judgment.  Doc. 37.  Plaintiff was notified that ruling upon his motion for summary judgment would be deferred until a ruling is issued on Defendants' motions to dismiss.  Doc. 46.

Plaintiff filed a motion for a preliminary injunction.  Docs. 59 and 60 (affidavit). Plaintiff has filed supplemental authority that are submitted in support of both motions as well as in opposition to the motions to dismiss.  Docs. 72, 78, 79, 80, and 82. Defendants have filed a response to the motion for a preliminary injunction, doc. 71, as supplemented, doc. 76, and Plaintiff has filed a reply, doc. 75.  The motion for a preliminary injunction, doc. 59, is also ready for ruling.

**Second motion for leave to file documents electronically, doc. 83**

Plaintiff has also filed a second motion for leave to file documents electronically. Doc. 83.  He contends that the distinction between parties represented by attorneys and parties who represent themselves is irrational and denies equal protection of the law. *Id*.  Since Plaintiff does not have a fundamental right to file documents in this court electronically, the Local Rule that does not permit a *pro se* litigant must be upheld if it is "rationally related to a legitimate" government interest.  Panama City Medical Diagnostic Ltd. v. Williams, 13 F.3d 1541, 1545 (11th Cir. 1994), citing Nordlinger v. Hahn, 505 U.S. 1, 112 S.Ct. 2326, 2331-2332, 120 L.Ed.2d 1 (1992).  This rule is rationally related to the governmental interest of accurate filings and dockets.  Attorneys are trained in the procedures of this court, and they are expected to title documents properly and comply with rules of procedure without extensive judicial supervision.  A *pro se* litigant does not

have such training and frequently makes mistakes, mistakes that must be corrected by the docketing clerks and by the court. A *pro se* litigant is afforded completely sufficient access to the court through paper filing. The motion should be again denied.

**Allegations of the complaint, doc. 34**

Plaintiff alleges that on April 29, 2003, he was awarded the degree of Doctor of Naturopathic Medicine in 2003. Doc. 34, ¶ 13. He states that he was granted an "unrestricted federal license to practice Naturopathy by the Government of the District of Columbia" and by Bingham County, Idaho, and that the licenses are current and active. *Id.*, ¶¶ 15-16, 18. Plaintiff alleges that the curriculum of the naturopathic college from which he graduated is equivalent to, and may exceed, the curriculum for naturopaths currently licensed by Florida. *Id.*, ¶¶ 38, 39.

Plaintiff states that Florida began to regulate the practice of Naturopathy in 1927. *Id.*, ¶ 32. At that time, the practice was defined by statute, there was an examination and licensing process, and the State Board of Naturopathic Examiners was created to carry out these regulatory functions. *Id.*

Plaintiff alleges that on May 3, 2003, he visited the Florida Department of Health's internet website to learn how to apply for a license to practice naturopathy in Florida. *Id.*, ¶ 22. He was informed by this website that:

> The licensing authority was abolished in 1959 and licensees who were licensed at that time were allowed to continue practicing naturopathic medicine. Therefore, no one can now become licensed as a naturopathic physican or practice this profession in Florida, unless they are one of the remaining people who currently hold a license. If someone were holding himself out as one of these licensees, then that person could be prosecuted for unlicensed activity.

*Id.*, ¶ 23.  The same website listed about seven currently licensed Naturopaths in Florida.  *Id.*, ¶ 24.

Plaintiff states that he sent several email requests to the Florida Department of Health for an application for a naturopathic license.  *Id.*, ¶¶ 25, 26.  Plaintiff alleges that he received an email response from Margret Anglin with the Florida Board of Medicine, "Council on Physician Assistants and Naturopathic Medicine" on June 4, 2003, which stated:

> Only those naturopaths who were licensed pursuant to chapter 462, F.S., as of 1985 may practice naturopathy today in the [S]tate of Florida pursuant to s. 462.2001, F.S.  Any person who practices naturopathy in the [S]tate of Florida without holding a valid active license to practice today and as of October 1, 1985[,] is guilty of a felony of the third degree, pursuant to s. 462.17(5).  Naturopathy was not "deregulated."  It is still a regulated profession.  However, no new naturopaths are being licensed.

*Id.*, ¶ 27.  Plaintiff alleges that this "Council" has no legal existence.  *Id.*, ¶ 28.  He acknowledges that he also received a written response (not an email) from the Florida Board of Medicine "stating similar verbiage."  *Id.*, ¶ 29.  Plaintiff alleges that "[n]o application to be licensed as a Florida Naturopath was ever provided to the plaintiff." *Id.*, ¶ 30.

Plaintiff asserts that pursuant to FLA. STAT. § 461.17(5), it is a third degree felony to practice Naturopathy in Florida without a valid active license or "to use a designation tending to imply or to designate the person as a practitioner of Naturopathy without then being lawfully licensed and authorized to practice Naturopathy" in Florida.  *Id.*, ¶ 31.

Plaintiff alleges that he and another out-of-state naturopath have "decided to establish together this nation's first 'on-line' and telephonic (both land line and cellular) consultation business serving naturopaths nationwide including, but not limited to, the

remaining Florida licensed naturopaths." *Id.*, ¶ 46. He states he has talked with a Florida licensed naturopath requesting a meeting to discuss the consulting services that Plaintiff and his partner could provide, but was told by that naturopath that such consultation was not an exception from the prohibitions of the Florida statute. *Id.*, ¶¶ 47, 48. Plaintiff alleges that such exceptions exist for allopathic and osteopathic physicians. *Id.*, ¶ 49.

Plaintiff contends that Florida's statutory prohibition against granting new naturopathic licenses and forbidding him from consulting with Florida licensed naturopaths violates the dormant Commerce Clause, Article I, Section 8, Clause 3, of the United States Constitution. *Id.*, ¶¶ 56, 60. He contends that subjecting him to the criminal penalty, which applies to the practice or advertisement of naturopathy without a license, violates his right to commercial free speech. *Id.*, ¶ 58. He asserts that because his request for licensing was handled by a "non existent" state agency, he was denied substantive and procedural due process. *Id.*, ¶ 59. Plaintiff seeks declaratory and injunctive relief. *Id.*, pp. 15-16.

**Legal standards governing a motion to dismiss**

Dismissal of a complaint, or a portion thereof, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted should not be ordered unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A court must "accept the factual allegations in the complaint as true and make all reasonable inferences in favor of the non-moving party." <u>Spanish Broadcasting System of Fla., Inc. v. Clear Channel Communications, Inc.</u>, 376

F.3d 1065, 1070 (11th Cir. 2004). *Pro se* complaints should be held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

**Legal analysis**

**The Florida Statutes involved**

Section 462.023 of the Florida Statutes, regulating the practice of naturopathy, provides:

> The department [of health] may adopt such rules as are necessary to carry out the purposes of this chapter, initiate disciplinary action as provided by this chapter, and shall establish fees based on its estimates of the revenue required to administer this chapter but shall not exceed the fee amounts provided in this chapter. *The department shall not adopt any rules which would cause any person who was not licensed in accordance with this chapter on July 1, 1959, and had not been a resident of the state for 2 years prior to such date, to become licensed.*

FLA. STAT. § 462.023 (emphasis added). Further, Florida Statutes provide that "[a]ll licenses to practice naturopathy issued pursuant to this chapter and valid on October 1, 1985, shall remain in full force and effect." FLA. STAT. § 462.2001. Finally, its is a third degree felony to:

> Practice or advertise to practice naturopathy or use in connection with her or his name any designation tending to imply or to designate the person as a practitioner of naturopathy without then being lawfully licensed and authorized to practice naturopathy in this state.

FLA. STAT. § 462.17(5).

**Eleventh Amendment Immunity**

Defendants have moved to dismiss the complaint in part due to the Eleventh Amendment. This aspect of the motion is a necessary bit of housekeeping, to clarify the proper Defendants as to each claim.

Plaintiff can only sue the state officials responsible for enforcement of the Florida laws set forth above:

> [W]here the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue.

Socialist Workers Party v. Leahy, 145 F.3d 1240, 1248 (11th Cir. 1998). Otherwise, an official capacity suit against a state official is a suit against the State itself and the Eleventh Amendment is a bar.

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

Ex parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 453, 52 L.Ed. 714 (1908). The corollary, and the rule for which Ex Parte Young is usually cited, is that when a state official has responsibility to enforce an unconstitutional statute, the Eleventh Amendment is no bar to federal injunctive relief to preclude such enforcement because his or her unconstitutional action would not be the act of the State:

> The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the

use of the name of the state, to enforce a legislative enactment which is void because unconstitutional.

209 U.S. at 159, 28 S.Ct. at 454.  As explained in Summit Medical Associates, P.C. v. Pryor, 180 F.3d 1326 (11th Cir. 1999), *cert. denied*, 529 U.S. 1012 (2000):

Therefore, unless the state officer has some responsibility to enforce the statute or provision at issue, the "fiction" of *Ex parte Young* cannot operate.  Only if a state officer has the authority to enforce an unconstitutional act in the name of the state can the Supremacy Clause be invoked to strip the officer of his official or representative character and subject him to the individual consequences of his conduct.

180 F.3d at 1341.

Attorney General Crist has no role in the licensing of naturopaths or in the enforcement of the criminal statute.  He is not a proper Defendant.[1]  The licensing of health professionals is delegated to the Florida Department of Health, and therefore, M. Rony Francois, as Secretary of the Florida Department of Health, is the proper Defendant for the licensing claim.  Larry McPherson, as Director of the Florida Board of Medicine, appears to have no role in the licensing of naturopaths, and even if that Board did, it is only a subsidiary agency of the Florida Department of Health; the Director of that Board is an unnecessary Defendant.  Likewise, the only proper Defendant for the challenge to the criminal statute is William "Willie" N. Meggs, State Attorney for the Second Judicial Circuit.[2]

---

[1] "It has long been recognized that the [Attorney General] is not a necessary party each time the constitutionality of a statute is drawn into question.  *Watson v. Claughton*, 160 Fla. 217, 34 So.2d 243 (1948).  The AG is thus not affirmatively required to intervene every time an entity challenges the constitutionality of a statute.  *Rosenfeld v. Lu*, 766 F.Supp. 1131, 1133-34 (S.D.Fla.1991)."  Mallory v. Harkness, 923 F. Supp. 1546, 1553 (S.D. Fla. 1996), *aff'd*, 109 F.3d 771 (11th Cir. 1997)(Table).

[2] The State Attorney enforces criminal law in Florida, not the Florida Attorney General.  FLA. CONST. Article V, Section 17.

Therefore, the complaint should be dismissed with respect to Attorney General Crist and Director Larry McPherson because they have Eleventh Amendment immunity. The complaint should be dismissed as to Secretary M. Rony Francois with respect to enforcement of the criminal statute and as to William "Willie" N. Meggs, State Attorney, as to licensing of naturopaths, as they have Eleventh Amendment immunity as to those claims. This will leave Francois and Meggs to defend the statutes as to which they have direct enforcement or regulatory authority.

**Standing and Due Process**

Plaintiff's due process claim is that an "unlawful" Council rejected his request for a license. This claim seems to confuse the process which is due when an administrative board renders a decision affecting a party's substantial interests. That is not the case here, where no state agency, however constituted, could have issued a license to Plaintiff.

Defendant Francois argues that Plaintiff suffered no injury since Plaintiff had no legal right to obtain a license and thus lacks standing to bring this claim.[3] Defendant also points out that Plaintiff discovered that he could not obtain a license from the Department website, and thus it did not matter whether the "Council" was lawfully constituted.[4]

Defendant's contention essentially argues a lack of constitutional injury, that is, the lack of a liberty or property interest entitled to the protections of due process. The

---

[3] None of the Defendants contest Plaintiff's standing to bring the Commerce Clause and First Amendment claims.

[4] It is further noted that Plaintiff alleges that the Department, through the Board of Medicine, officially notified him that he could not receive a license in writing.

first step in the analysis of such a claim is to identify the interest to be protected by due process:

> Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).

Arrington v. Helms, 438 F.3d 1336, 1347-1348 (11th Cir. 2006).

> Property interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972). Whether these sources create a property interest must be decided by reference to state law. *Id.* at 577, 92 S.Ct. at 2709.

438 F.3d at 1348.

Plaintiff has no right under Florida law to be granted a license. Hence, he cannot show a liberty or property interest for which federal due process protections would apply.[5] Hence, Plaintiff has no injury and lacks standing to make the claim. The due process claim should be dismissed with prejudice.

**Commerce Clause claim**

Defendants contend that the complaint fails to state a claim upon which relief may be granted under the Commerce Clause. The Commerce Clause both grants

---

[5] Further, state regulations governing the practice of medicine or other health care disciplines do not implicate fundamental rights for purposes of due process or equal protection analysis. Woods v. Holy Cross Hospital, 591 F.2d 1164, 1173 (5th Cir. 1979); Florida v. Mathews, 526 F.2d 319, 325 (5th Cir. 1976) (special licensing of nursing home administrators does not involve suspect class or fundamental right); Maguire v. Thompson, 957 F.2d 374, 376 (7th Cir.), *cert. denied*, 506 U.S. 822 (1992); Gross v. University of Tennessee, 620 F.2d 109, 110 (6th Cir. 1980).

powers to Congress and "also limits the power of the States to erect barriers against interstate trade." Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980). This "negative command" is "known as the dormant Commerce Clause." American Trucking Associations, Inc. v. Michigan Public Service Com'n, 545 U.S. 429, 125 S.Ct. 2419, 2422, 162 L.Ed.2d 407 (2005).

However, "[i]n the absence of conflicting federal legislation, the States retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." Lewis v. BT Inv. Managers, Inc., 447 U.S. at 35, 100 S.Ct. at 2015.

> [T]he first step in analyzing any law subject to judicial scrutiny under the negative Commerce Clause is to determine whether it "regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce." As we use the term here, "discrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually per se invalid. By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."

Oregon Waste Systems, Inc. v. Department of Environmental Quality of State of Or., 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994) (citations omitted).

> "If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."

Lewis v. BT Inv. Managers, Inc., 447 U.S. at 37, 100 S.Ct. at 2016, *quoting*, Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

The Court has generally recognized that:

> States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.

Goldfarb v. Virginia State Bar, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975).  "[T]he regulation of health and safety matters is primarily, and historically, a matter of local concern." Hillsborough County, Fla. v. Automated Medical Laboratories, Inc., 471 U.S. 707, 719, 105 S.Ct. 2371, 2378, 85 L.Ed.2d 714 (1985).  This is the starting point for analysis of the constitutional claims here.

In Kirkpatrick v. Shaw, 70 F.3d 100 (11th Cir. 1995), the plaintiff, admitted to practice law in New York and Oklahoma, passed the Florida Bar and applied for admission.  70 F.3d at 101.  His application was rejected because the Florida Board of Bar Examiners found that he had been untruthful about his prior unethical activity.  *Id.*, at 102.  He sued in this court challenging the Florida Bar rules governing admission of attorneys on a variety of constitutional grounds.  Among the challenges was a Commerce Clause challenge.  As to that, the Eleventh Circuit said that the plaintiff had failed to show that the rules had a purpose of excluding out-of-state lawyers or that the rules were an undue burden on interstate commerce, and thus had failed to show that the rules discriminated against interstate commerce.  *Id.*, at 103.  The court quoted the rule from Pike that "[s]tate regulations that do not discriminate against interstate commerce are struck down only if 'the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.' " *Id.*  The court reasoned:

> Requiring all applicants to the Florida Bar to submit to a review for fitness to practice law is not a "clearly excessive" burden, especially in light of the

expected benefit of protecting Florida's citizens from unscrupulous attorneys.

*Id.*

In <u>Idaho Ass'n of Naturopathic Physicians, Inc.</u>, 582 F.2d 849 (4th Cir. 1979), an organization of naturopaths sued a variety of governmental agencies seeking relief from restrictions and prohibitions that hindered their practice of naturopathy.  The claims were founded upon due process, equal protection, freedom of speech, privileges and immunities, and right to privacy, but not upon the Commerce Clause.  582 F.2d at 851.  The court cited and discussed seven cases rejecting the same sort of federal claims,[6] and said:  "In light of the decisions of the Supreme Court that we have reviewed, we find that the naturopaths' basic claim has been firmly, repeatedly, and authoritatively rejected."  582 F.2d at 853-854.  <u>Williams v. State of Alabama</u>, 453 So. 2d 1051 (Ala. 1984), likewise held that requiring a naturopath to obtain a regular medical license does not violate the federal constitution.  Again, however, there was no Commerce Clause claim.

In <u>Polhemus v. American Medical Ass'n</u>, 145 F.2d 357 (10th Cir. 1944), New Mexico enacted a law that permitted allopathic, osteopathic, and chiropractic

---

[6] <u>Davis v. Beeler</u>, 185 Tenn. 638, 207 S.W.2d 343 (1947), *appeal dism'd for want of a substantial federal question*, 333 U.S. 859, 68 S.Ct. 745, 92 L.Ed. 1138 (1948); <u>Taylor v. Oklahoma</u>, 291 P.2d 1033 (1955), *appeal dism'd for want of a substantial federal question*, 352 U.S. 805, 77 S.Ct. 33, 1 L.Ed.2d 38 (1956); <u>Dantzler v. Callison</u>, 230 S.C. 75, 94 S.E.2d 177, *appeal dism'd for want of a substantial federal question*, 352 U.S. 939, 77 S.Ct. 263, 1 L.Ed.2d 235 (1956); <u>Hitchcock v. Collenberg</u>, 140 F.Supp. 894 (D. Md. 1956), *aff'd*, 353 U.S. 919, 77 S.Ct. 679, 1 L.Ed.2d 718 (1957); <u>State v. Errington</u>, 355 S.W.2d 952, *appeal dism'd for want of a substantial federal question*, 371 U.S. 3, 83 S.Ct. 27, 9 L.Ed.2d 48 (1962); <u>Stuart v. Wilson</u>, 211 F.Supp. 700 (N.D. Tex. 1962), *aff'd*, 371 U.S. 576, 83 S.Ct. 547, 9 L.Ed.2d 537 (1963); <u>Beck v. McLeod</u>, 240 F.Supp. 708 (D. S.C. 1965), *aff'd*, 382 U.S. 454, 86 S.Ct. 645, 15 L.Ed.2d 522 (1966).

practitioners to continue to practice under their licenses without an examination, but did not extend this "grandfather" privilege to a naturopath.  The court held that this did not deny the plaintiff equal protection or due process under the Fourteenth Amendment.  To like effect is Maguire v. Thompson, 957 F.2d 374 (7th Cir.), *cert. denied*, 506 U.S. 822 (1992).  There the Seventh Circuit held that the refusal of the State of Illinois to license practitioners of naprapathy[7] and requiring such practitioners to obtain a medical license before practicing such skills, did not violated equal protection or due process.

In the case at bar, Florida's refusal to license naturopaths does not have the purpose of unfairly protecting Florida licensed naturopaths from competition, especially as judged at this point in the history of the statutes when there are only seven licensed naturopaths remaining.  The remaining licensed naturopaths have been in practice for nearly 50 years, and probably more, so the "protectionism" that results from Florida's regulatory choice is little significance to interstate commerce.  Further, that there are still some licensed naturopaths in Florida is only the result of the constitutional necessity to grandfather those who were licensed when the abolition of licensing took place.

Additionally, the lack of licensing in Florida applies equally to non-residents and to Florida residents like Plaintiff, who are trained in naturopathy, and only forbids the practice of naturopathy in Florida for those lacking a Florida license.  Thus, the statutes only apply to intra-state transactions and thus probably does not violate the dormant Commerce Clause at all for that reason. American Trucking Associations, Inc. v. Michigan Public Service Com'n, 125 S.Ct. at 2423 (finding no dormant Commerce

---

[7] Naprapathy is described in this case as drugless treatment through manipulation of ligaments and connective tissue.

Case No. 4:05cv177-RH/WCS

Clause violation for a flat $100 fee applying only to intrastate transactions, applying "evenhandledly to all carriers making domestic journeys," and not reflecting an effort to tax activity taking place outside the state).

Florida has a significant interest in determining who to license in health care, and what conditions to attach to such licenses as these regulatory activities directly affect the health and safety of Florida citizens.  A person trained in naturopathy may still practice that discipline in states that license naturopathic practice, but such a person cannot practice as a licensed naturopath in Florida.  This creates a burden on commerce because it limits the places where a licensed naturopath may practice.  But the burden on commerce is slight and is not excessive in comparison to the legitimate state interest.  A person trained in naturopathy may still practice those skills in Florida if he or she obtains additional medical training and obtains an allopathic or osteopathic medical license.  In other words, naturopathic skills may be exercised in the care of patients in Florida, but only with the added knowledge of health care that comes with an allopathic or osteopathic degree.  As a consequence, the complaint fails to state a claim upon which relief may be granted under the dormant Commerce Clause.

### First Amendment claim

The First Amendment claim (to engage in free speech activities as a naturopath without suffering a criminal penalty), therefore, must fail.  "For commercial speech to fall within the protections of the First Amendment, it must concern lawful activity and not be misleading."  This That and Other Gift and Tobacco, Inc. v. Cobb County, Ga., 285 F.3d 1319, 1323 (11th Cir. 2006), *citing*, Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).  Plaintiff

cannot lawfully practice naturopathy in Florida, or represent to patients that he is trained in naturopathic healing, without a Florida license, and a license is not available. *See*, Kirkpatrick v. Shaw, 70 F.3d at 104 (Florida Bar applicant's First Amendment claim without merit because had not shown that his application was improperly rejected). *See also*, State of Nebraska, Dep't of Health v. Hinze, 232 Neb. 550, 441 N.W.2d 593, 597 (1989) (finding that a state has a compelling interest in regulating health and welfare and this "outweighs any incidental infringement of the free speech of individuals who are not licensed to practice medicine.").

Plaintiff argues that he at least should be allowed to use his professional titles. The titles he would use are "N.M.D. (Bingham County, Idaho) or Naturopath (District of Columbia)." Doc. 57, p. 2. He asserts that "[r]equiring such disclosure thus would serve the government's substantial interest in protecting Floridians who *may rely on the involved naturopath titles when they seek services.*" *Id.* That, of course, is what Florida seeks to regulate. Without a Florida license, Plaintiff cannot render naturopathic services to Floridians. This kind of speech is unlawful in Florida, and therefore, not protected commercial speech under the First Amendment.

**Conclusion**

Accordingly, it is **RECOMMENDED** that:

1. Defendants' motions to dismiss, docs. 41 and 42, be **GRANTED**, and the complaint be **DISMISSED WITH PREJUDICE**.

2. Plaintiff's motions for a preliminary injunction and for leave to file documents electronically, docs. 59 and 83, be **DENIED**.

3.  Plaintiff's motion for partial summary judgment, doc. 37, be **DENIED AS MOOT**.

**IN CHAMBERS** at Tallahassee, Florida, on July 27, 2006.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**